IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>and<br><br>STATE OF ILLINOIS<br><br>                     *Plaintiffs*,<br><br>v.<br><br>ADVOCATE HEALTH CARE NETWORK,<br><br>ADVOCATE HEALTH AND HOSPITALS CORPORATION,<br><br>and<br><br>NORTHSHORE UNIVERSITY HEALTHSYSTEM<br><br>                     *Defendants*. | Case No. 15-cv-11473<br>Judge Jorge L. Alonso<br>Mag. Judge Jeffrey Cole |

**DEFENDANT NORTHSHORE UNIVERSITY HEALTH SYSTEM'S
ANSWER TO COMPLAINT FOR TEMPORARY RESTRAINING
<u>ORDER AND PRELIMINARY INJUNCTION</u>**

Defendant NorthShore University HealthSystem ("NorthShore"), by and through its undersigned counsel, answers the Federal Trade Commission's ("FTC" or "Commission") Complaint as follows. To the extent any allegation is not specifically admitted or denied, NorthShore denies the allegation.

NorthShore states that the Complaint is fundamentally flawed and reflects a misguided application of the antitrust laws to the merger between Advocate Health Care Network and Advocate Health and Hospitals Corporation (collectively, "Advocate") and NorthShore ("the Transaction") because both organizations face robust and increasing competition today and in the future from a strong and expanding set of competitors in an urban Chicago metropolitan area.

1

Additionally, the merger of Advocate and NorthShore will be procompetitive and will further enhance the quality of care for patients and lower the total cost of healthcare. NorthShore does not concede any of the anticompetitive effects proffered by the Commission, but in any event represents that the foregoing procompetitive benefits are substantial and will greatly outweigh any and all proffered anticompetitive effects.

## I.

## NATURE OF THE CASE

1. NorthShore admits that it is one of over 70 hospitals in the Chicago metropolitan area that provide general acute care ("GAC") inpatient services. Further answering, NorthShore admits that NorthShore and Advocate are providers of general acute care ("GAC") inpatient hospital services, among other services, in the northern suburbs of Chicago, Illinois, as well as throughout the greater Chicagoland area. NorthShore further admits that the Transaction will merge Advocate and NorthShore into one integrated health system. NorthShore denies the remaining allegations in Paragraph 1

2. To the extent that the allegations in Paragraph 2 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 2.

3. NorthShore admits that portions of documents from NorthShore and other entities are quoted in Paragraph 3 without complete context, and specifically denies the characterization of the language as alleged or that they constitute admissions by NorthShore. NorthShore also specifically denies that Advocate and NorthShore are each other's "close" or "closest" competitors or "main" and "real" competition. NorthShore avers that in 2007 the Commission found that no other hospitals constrain Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital, as these three hospitals comprise their own geographic market. Further

answering, NorthShore upgrades its medical facilities, invests in new technologies, and/or adjusts its approach to managed care contracting for a myriad of reasons, including, but not limited to, in order to improve the quality of patient care, improve the patient experience, and in response to competition from numerous providers in the area including, without limitation, Northwestern Memorial HealthCare and Northwestern Lake Forest Hospital ("Northwestern"), Presence Health ("Presence"), Swedish Covenant Hospital ("Swedish Covenant"), Northwest Community Hospital ("Northwest Community"), Rush University Medical Center ("Rush"), Alexian Brothers Health System ("Alexian Brothers"), Advocate Health Care ("Advocate"), Tenet Health System ("Tenet"), and Vista Health System ("Vista"), and numerous other competing hospitals, healthcare systems, outpatient facilities, and retail health care providers. NorthShore denies the remaining allegations in Paragraph 3.

4. NorthShore denies the allegations in Paragraph 4. Further answering, the proposed relevant geographic market area is artificial and not based on any known boundaries or competitive constraints. The FTC's arbitrary selection of hospitals included within its geographic market is an attempt to gerrymander a market and is inconsistent with market realities. NorthShore further avers that the FTC's allegations in Paragraph 4 are directly in contrast to and inconsistent with its 2007 ruling in *In re Evanston Northwestern Healthcare Corporation*, that "[t]he geographic triangle in which the three ENH hospitals [NS Evanston, NS Glenbrook, and NS Highland Park] are located constitutes a well-defined antitrust geographic market under Section 7." *In re Evanston Northwestern Healthcare Corporation*, Dkt. No. 9315 (Aug. 6, 2007), Opinion of the Commission at 64, 78.

5. To the extent that the allegations in Paragraph 5 state a legal conclusion, NorthShore avers that it need not respond. NorthShore admits that it employs and affiliates with

3

…
…

physicians, and offers GAC inpatient hospital services, among numerous other healthcare services. NorthShore denies the remaining allegations in Paragraph 5.

6. NorthShore admits that it seeks inclusion in commercial payers' hospital networks, as do numerous competitors in the Chicagoland area. Further answering, NorthShore avers that Blue Cross Blue Shield's most popular exchange product—Blue Choice—excludes both Advocate and NorthShore from its network. NorthShore denies the remaining allegations in Paragraph 6.

7. NorthShore denies the allegations in Paragraph 7.

8. NorthShore denies the allegations in Paragraph 8.

9. NorthShore denies the allegations in Paragraph 9.

10. NorthShore denies the allegations in Paragraph 10.

## II.

## BACKGROUND

### A.

### Jurisdiction and Venue

11. To the extent that the allegations in Paragraph 11 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 11.

12. NorthShore admits the allegations in Paragraph 12.

13. NorthShore admits Paragraph 13 accurately quotes a segment of Section 13(b) of the FTC Act.

14. NorthShore denies the allegations in Paragraph 14.

B.

The Parties

15.    NorthShore admits the allegations in the first sentence of Paragraph 15. Answering further, NorthShore avers that the Commission, together with other federal agencies and the federal courts, are vested with authority and responsibility for enforcing Section 7 of the Clayton Act and Section 5 of the FTC Act.

16.    NorthShore admits the allegations in Paragraph 16.

17.    NorthShore admits the allegations in Paragraph 17.

18.    NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.    NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.    NorthShore admits the allegations in Paragraph 20.

21.    NorthShore denies that it competes "particularly" with Advocate Condell and Advocate Lutheran General, and instead avers that it competes with numerous providers including, but not limited to, Northwestern Lake Forest Hospital, Swedish Covenant Hospital, Presence Resurrection Medical Center, Northwest Community Hospital, Vista Medical Center East, Vista Medical Center West, Presence St. Francis Hospital, Presence St. Joseph Hospital, Northwestern Memorial Hospital, Advocate Condell, Advocate Lutheran General, Loyola University Medical Center, Loyola Gottlieb Memorial Hospital, Ann & Robert H. Lurie Children's Hospital of Chicago, Rush University Medical Center, Alexian Brothers Health System, Alexian Brothers Medical Center, Tenet Weiss Memorial Hospital, Tenet West Suburban Medical Center and numerous other competing hospitals, healthcare systems, outpatient facilities, and retail health care providers. NorthShore admits the remaining

5

allegations in the second through ninth sentences of Paragraph 21.

22. NorthShore admits that it has an employed physician group, Faculty Practice Associates (also known as NorthShore Medical Group), and that NorthShore clinically integrates with some non-employed physicians who are on staff and have admitting privileges at one or more of NorthShore's hospitals. NorthShore admits that certain of its non-employed but clinically integrated physicians participate in NorthShore's independent physicians association called NorthShore Physician Associates. NorthShore admits that its IPA negotiates contracts with commercial payers on behalf of NorthShore's participating non-employed physicians. NorthShore denies the remaining allegations in Paragraph 22.

## C.

### The Transaction and the Commission's Response

23. NorthShore avers that the phrase "11th largest non-profit hospital system in the United States" is ambiguous as framed and therefore denies that allegation. NorthShore admits the remaining allegations in Paragraph 23.

24. NorthShore admits that the Commission initiated an administrative proceeding that will commence according to the FTC rules on administrative proceedings. *See* 16 C.F.R Part 3. NorthShore is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24 and therefore denies them.

25. NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and therefore denies them.

## III.

### THE RELEVANT SERVICE MARKET

26. To the extent that the allegations in Paragraph 26 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in

6

Paragraph 26.

27. To the extent that the allegations in Paragraph 27 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 27.

28. To the extent that the allegations in Paragraph 28 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 28.

29. To the extent that the allegations in Paragraph 29 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 29.

## IV.

## THE RELEVANT GEOGRAPHIC MARKET

30. To the extent that the allegations in Paragraph 30 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 30, and specifically denies that the "North Shore Area," as defined in Paragraph 23, is the relevant geographic market for purposes of analyzing the Transaction under the Federal Antitrust laws. Further answering, the proposed relevant geographic market area is artificial and not based on any known boundaries or competitive constraints. The FTC's arbitrary selection of hospitals included within its geographic market is an attempt to gerrymander a market and is inconsistent with market realities. NorthShore further avers that the FTC's allegations in Paragraph 30 are directly in contrast to and inconsistent with its unanimous 2007 ruling in *In re Evanston Northwestern Healthcare Corporation*, that "[t]he geographic triangle in which the three ENH hospitals [NS Evanston, NS Glenbrook, and NS Highland Park] are located constitutes a well-defined antitrust geographic market under Section 7." *In re Evanston*

7

*Northwestern Healthcare Corporation*, Dkt. No. 9315 (Aug. 6, 2007), Opinion of the Commission at 64, 78. Indeed, the Commission ruled that *no* other hospitals were constraining forces on NorthShore, and specifically rejected a trial finding by its Administrative Law Judge ("ALJ") that the three NorthShore hospitals were part of a broader, more geographically dispersed market encompassing four additional hospitals, including Advocate Lutheran General Hospital. *Id*. at 57-58 ("To the extent that the ALJ held that MCOs could defeat a post-merger anticompetitive price increase by ENH by using one or more of these four hospitals [Lake Forest, Lutheran General, Rush North Shore, and St. Francis] we reject this holding."). Furthermore, the ALJ rejected the argument that Condell Medical Center (now part of Advocate) was within the geographic market, a finding that the Commission did not overrule. *Id.* at 6. In its analysis, the Commission stated that "[t]he issue is not whether other hospitals competed with the merging parties, but whether they did so to a sufficient degree to offset the loss of competition caused by the merger." *Id.* at 19. But, the Commission found that the degree of competition between NorthShore and Advocate was not "sufficient" to expand the market beyond the "triangle" of NorthShore hospitals. Stated differently, the Commission found that neither Lutheran General or Condell were capable of constraining the NorthShore hospitals with respect to prices charged to managed care organizations.

   31. To the extent that the allegations in Paragraph 31 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 31.

   32. NorthShore denies the allegations in Paragraph 32.

   33. To the extent that the allegations in Paragraph 33 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in

Paragraph 33.

34. To the extent that the allegations in Paragraph 34 state a legal conclusion, NorthShore avers that it need not respond. Further answering, NorthShore repeats and reaffirms its answers to Paragraphs 1, 3 and 21. NorthShore denies the remaining allegations in Paragraph 34.

## V.

## MARKET STRUCTURE AND THE TRANSACTION'S PRESUMPTIVE ILLEGALITY

35. NorthShore admits both it and Advocate are two of many providers of GAC inpatient hospital services in the Chicago, Illinois area. Further answering, NorthShore repeats and reaffirms its answers to Paragraphs 1, 3 and 21. NorthShore denies the remaining allegations in Paragraph 35.

36. To the extent that the allegations in Paragraph 36 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 36.

37. NorthShore admits that the U.S. Department of Justice and the FTC's Merger Guidelines measure market concentration using the HHI. NorthShore denies the remaining allegations in Paragraph 37.

## VI.

## ANTICOMPETITIVE EFFECTS

### A.

### Competition Among Hospitals Benefits Consumers

38. NorthShore denies the first sentence of Paragraph 38. NorthShore avers that hospitals—as well as numerous other healthcare providers, including physicians and outpatient

9

facilities—seek inclusion in certain commercial payers' health plan provider networks and seek to attract patients. NorthShore denies the remaining allegations in Paragraph 38.

39. NorthShore admits that the second sentence in Paragraph 39 illustrates one method of becoming an in-network provider. Further answering, NorthShore admits that other healthcare providers such as physicians and outpatient facilities, in addition to hospitals, negotiate to be included in commercial payers' health plan provider networks. The financial terms under which a hospital, physician, or outpatient facility is reimbursed for services rendered is only one component, among many, considered when negotiating with a commercial payor. NorthShore denies the remaining allegations in Paragraph 39.

40. NorthShore admits that health plan members may pay less to access in-network hospitals than out-of-network hospitals, but NorthShore denies that health plan members typically pay "far" less. NorthShore denies the remaining allegations in Paragraph 40.

41. NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies them.

42. NorthShore admits that fee-for-service payment models typically involve reimbursement for services provided to a commercial payer's health plan members which can be in the form of per-service, per-diem, or discount-off-charges methods. Answering further, NorthShore avers that there are multiple methods of reimbursement under risk-based payment models, one example of which is when a hospital is reimbursed a fixed payment for all services provided to a particular member. NorthShore denies the remaining allegations in Paragraph 42.

43. NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and therefore denies them.

44. NorthShore is without knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 44 and therefore denies them.

45. NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 and therefore denies them.

46. NorthShore admits that hospitals, as well as other healthcare providers such as physicians and outpatient facilities, seek to attract patients. Further answering, NorthShore admits that providers seek to attract patients based on, among other qualities, quality of care, amenities, convenience, and patient satisfaction. NorthShore specifically denies that a merger of competing hospitals eliminates these forms of non-price competition and reduces the merged entity's incentive to improve and maintain quality. NorthShore denies the remaining allegations in Paragraph 46.

**B.**

**The Transaction Would Eliminate Beneficial Price Competition**

47. NorthShore admits that portions of documents from NorthShore and other entities are quoted in Paragraph 47 without complete context, and specifically denies the characterization of the language as alleged or that they constitute admissions by NorthShore. NorthShore also specifically denies that Advocate and NorthShore are each other's "close" or "closest" competitors or "main" and "real" competition. NorthShore avers that in 2007 the Commission found that no other hospitals constrain Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital, as these three hospitals comprise their own geographic market. NorthShore denies the remaining allegations in Paragraph 47.

48. NorthShore denies the allegations in Paragraph 48.

49. NorthShore is without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 49 and therefore denies them. NorthShore denies that Advocate and NorthShore serve as "key alternative providers" of GAC

inpatient hospital services for healthcare consumers. As one example, Blue Cross Blue Shield's fastest growing exchange product—BCBS Blue Choice—excludes both Advocate and NorthShore. Further answering, NorthShore denies that other hospitals in Chicago, including those located downtown and in the outlying suburbs, are not adequate substitutes for Advocate and NorthShore. NorthShore denies the remaining allegations in Paragraph 49.

50. NorthShore denies the allegations in Paragraph 50.

51. NorthShore denies the allegations in Paragraph 51.

52. NorthShore admits that one form of "narrow network" health insurance products are those products that include fewer than all providers. NorthShore denies the remaining allegations in Paragraph 52.

53. NorthShore admits that Cigna's Local Plus narrow network product includes NorthShore facilities, and does not include numerous other providers including Advocate facilities. NorthShore denies the remaining allegations in Paragraph 53.

## C.

### The Transaction Would Eliminate Vital Quality and Service Competition

54. NorthShore admits that providers may invest in quality initiatives and new technologies due to competition with other providers, but denies that such actions are taken solely due to competition. NorthShore admits that it competes with numerous Chicagoland area health providers across non-price dimensions, including, but not limited to, Northwestern, Presence, Swedish Covenant, Northwest Community, Rush, Advocate, Loyola, Alexian Brothers, Tenet, and Vista and numerous other hospitals, healthcare systems, outpatient facilities, as well as retail healthcare providers. NorthShore denies the remaining allegations in Paragraph 54.

55. NorthShore admits that NorthShore's Care Transformation Team has undertaken

efforts to continually improve NorthShore's health outcomes and quality of care, including, but not limited to, health information technology, data analytics, disease management, and clinical integration. NorthShore denies the remaining allegations in Paragraph 55.

56. NorthShore admits that it created the NorthShore Orthopedic Institute, updated labor and delivery rooms at Highland Park Hospital as part of a broad modernization project that also includes, for example, new and remodeled surgical suites and post-anesthesia stations, and has undergone general upgrading and modernization of Skokie Hospital consistent with its mission to provide high quality care to the patients it serves. Answering further, NorthShore avers that it implemented the aforementioned projects and others for a myriad of reasons, including but not limited to, competition from numerous healthcare providers, particularly Northwestern, and to improve patient satisfaction and overall quality of care. NorthShore denies the remaining allegations in Paragraph 56.

57. NorthShore denies the allegations in Paragraph 57. Further answering, patients and consumers will benefit from the merger in the form of increased insurance options through a more attractive ANHP high performing network as well as an overall lower cost of care.

## VII.

## ENTRY BARRIERS

58. NorthShore denies the allegations in Paragraph 58.

59. NorthShore denies the allegations in Paragraph 59.

60. NorthShore admits that the Illinois Health Facilities Planning Act together with the Illinois Health Facilities Planning Board currently impose rules and regulations related to the building or expansion of healthcare facilities in the State of Illinois. *See* 20 ILCS § 3960 et. seq.; 77 Ill. Admin. Code Part 1100 *et. seq.* NorthShore denies the remaining allegations in Paragraph 60.

61. NorthShore denies the allegations in Paragraph 61.

## VIII.

## EFFICIENCIES

62. NorthShore denies the allegations in Paragraph 62.

63. NorthShore denies the allegations in Paragraph 63. NorthShore avers that the Transaction will result in substantial merger-specific price efficiencies stemming from a high-performance narrow network insurance product, and additionally will result in cost savings for clinical services stemming from coordination among providers and scale-related cost savings.

64. NorthShore denies the allegations in Paragraph 64.

## IX.

## LIKELIHOOD OF SUCCESS ON THE MERITS, BALANCE OF EQUITIES, AND NEED FOR RELIEF

65. To the extent that the allegations in Paragraph 65 state a legal conclusion, NorthShore avers that it need not respond. NorthShore denies the remaining allegations in Paragraph 65.

66. NorthShore denies the allegations in Paragraph 66.

67. NorthShore denies the allegations in Paragraph 67.

68. NorthShore denies the allegations in Paragraph 68.

69. NorthShore denies the allegations in Paragraph 69.

NorthShore denies the allegations following the "WHEREFORE" clause following numbered Paragraph 69.

## REQUEST FOR RELIEF

WHEREFORE, NorthShore respectfully requests that this Court enter judgment in its favor and against Plaintiff on all claims asserted in this action, and that this Court award

NorthShore its costs, and provide such further relief and additional relief that this Court deems appropriate and just.

## DEFENSES

Without assuming any burden it might otherwise not bear and without waiving any available defense, NorthShore asserts the following defenses and will seek leave to add additional defenses if and when deemed appropriate as the case progresses.

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Granting the relief sought is contrary to the public interest. The proposed merger will be procompetitive and will provide significant consumer benefits, including but not limited to, enhanced quality of care and a lower total cost of care.

### Third Defense

The alleged relevant geographic market definition fails as a matter of law. The proposed relevant geographic market area is artificial and not based on any known boundaries or competitive constraints. The FTC's arbitrary selection of hospitals included within its geographic market is an attempt to gerrymander a market and is inconsistent with market realities as well as its prior position in *In re Evanston Northwestern Healthcare Corporation*, Dkt. No. 9315 (Aug. 6, 2007).

### Fourth Defense

The Complaint fails to allege a plausible relevant product market. The Complaint improperly focuses solely on inpatient GAC services, excluding all other healthcare services

15

provided by NorthShore, Advocate, and their many competitors, including but not limited to, outpatient and retail health care services.

### Fifth Defense

The Complaint fails to allege undue share in any plausibly defined relevant market.

### Sixth Defense

The Complaint fails to allege any plausible harm to competition. The proposed merger will be procompetitive and will provide significant consumer benefits, including but not limited to, enhanced quality of care and a lower total cost of care. Further, the merger will increase health insurance competition and put downward pressure on health insurance prices.

### Seventh Defense

The Complaint fails to allege any plausible harm to any consumers or consumer welfare. Consumers will benefit from, among other things, increased quality of care, lower healthcare costs, and increased competition in the insurance market.

### Eighth Defense

The alleged harm to potential competition is not actionable.

### Ninth Defense

Plaintiff's claims are barred in whole or in part by the doctrine of judicial estoppel. In 2007, the FTC argued and the Commission found that no other hospitals constrain Evanston Hospital, Glenbrook Hospital, and Highland Park Hospital, as these three hospitals comprise their own geographic market.

### Tenth Defense

New entry and expansion by competitors is easy, and can be timely, likely, and sufficient such that it will ensure that there will be no harm to competition, consumers, or consumer welfare.

### Eleventh Defense

The customers at issue in the Complaint have a variety of tools to ensure that they receive competitive pricing and terms for the products and services at issue in the Complaint.

### Twelfth Defense

The combination of Advocate and NorthShore's businesses will be procompetitive. The merger will result in substantial merger-specific efficiencies, cost synergies, and other procompetitive effects that will directly benefit consumers and patients throughout Chicago. These benefits greatly outweigh any and all proffered anticompetitive effects.

NorthShore has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action. NorthShore reserves the right to amend, or seek to amend, its answer or defenses.

## NOTICE OF CONTEMPLATED RELIEF

WHEREFORE, NorthShore requests that the Court enter judgment in its favor as follows:

    A. The Complaint be dismissed with prejudice;

    B. None of the Complaint's contemplated relief issues to the Plaintiffs;

    C. Costs incurred in defending this action be awarded to NorthShore, including attorneys' fees; and

    D.  Any and all other relief as the Court may deem just and proper.

Dated:  January 11, 2016

Respectfully submitted,

__s/ David E. Dahlquist_____
David E. Dahlquist, Esq.
Michael S. Pullos, Esq.
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Phone: (312) 558-5600
Fax: (312) 558-5700
DDahlquist@winston.com
MPullos@winston.com

*Counsel for Defendant NorthShore University HealthSystem*

## **CERTIFICATE OF SERVICE**

David E. Dahlquist, an attorney, certifies that he caused a copy of the foregoing document to be served by electronic means on all Electronic Fling Users of record, this 11th day of January 2016.

                                   _s/ David E. Dahlquist_____

                                    David E. Dahlquist