**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FEDERAL TRADE COMMISSION

      And

STATE OF ILLINOIS

           Plaintiffs,

      v.

ADVOCATE HEALTH CARE NETWORK,

ADVOCATE HEALTH AND HOSPITALS
CORPORATION,

      And

NORTHSHORE UNIVERSITY
HEALTHSYSTEM

           Defendants.

No. 15-cv-11473
Magistrate Judge Cole

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL**

Plaintiff the Federal Trade Commission ("Plaintiff" or "FTC") respectfully submits this

memorandum in opposition to the motion of NorthShore University HealthSystem

("NorthShore"), Advocate Health Care Network, and Advocate Health and Hospitals

("Advocate") (collectively "Defendants") to compel the production of documents relating to the

FTC's market share and hospital diversion allegations in paragraphs 36, 37, and 48 of its

Complaint.  The FTC has produced the raw data that underlie the figures alleged in its Complaint

and has produced any non-privileged documents in its custody or control.  The only potentially

responsive materials withheld by the FTC are (i) preliminary analyses of its outside economists, which are protected from disclosure under the Joint Stipulated Case Management Order ("CMO") and the Federal Rules of Civil Procedure ("Federal Rules"); and (ii) analyses done by the FTC's internal staff economists (who will not be testifying in this case) that are protected by the Federal Rules and the deliberative process privilege and are not required to be produced under the CMO.  The FTC will turn over the final reports of its testifying experts, and any materials not previously produced that those experts rely upon, pursuant to the CMO and at the time specified therein.  Defendants' motion should therefore be denied.

## I.  PRELIMINARY STATEMENT

Plaintiffs' Complaint alleges that Advocate and NorthShore each has a large presence in the relevant geographic market, that Advocate and NorthShore hospitals are close competitors in that market, and that their combination will lead to higher health care costs for consumers.  *See, e.g.,* Plaintiffs' Complaint for Temporary Restraining Order and Preliminary Injunction ("Complaint" or "Compl.") ¶¶ 1, 3, 4, 6, 7, 35, 47, 50, 53.  The Complaint describes ample testimony and documentary evidence supporting the allegations.  *See, e.g.,* Compl. ¶¶ 3, 47, 49, 50, 52, 55.  Preliminary economic analyses further support the allegations, and four of the sixty-nine paragraphs in the complaint refer to market share and diversion estimates derived from hospital admission data.  Compl. ¶¶ 5, 36, 37, 48.  The FTC produced the hospital admission data underlying those estimates to Defendants weeks ago, before the deadline for initial disclosures, and Defendants' motion now seeks the "calculations" made by the FTC's outside economists and/or the FTC's internal economists during the pre-filing investigation.  While it is unclear what exactly Defendants mean by "calculations," any document or other material containing the work product of the FTC's experts is privileged.

Defendants stipulated to a comprehensive schedule governing the timing of discovery in this case, including the timing of the reports and disclosures of testifying experts. The schedule was the product of extensive negotiations between the parties and the final CMO reflects concessions made by both sides. When negotiating the CMO, Defendants rejected proposals made by the FTC for earlier expert disclosures and insisted on delaying the beginning of expert discovery until February 26, 2016. Defendants also rejected the FTC's proposal to allow disclosure of a testifying expert's intermediate data runs. Having secured the agreements they wanted, Defendants cannot credibly complain that those same agreements are prejudicial to them. Defendants have not established any good cause to modify the CMO and this Court should deny their motion.

Defendants are not entitled to discovery of the FTC's testifying experts in advance of the deadlines set by the Court. Even when such discovery is available, it will not include the notes and drafts sought by Defendants' motion. Those preliminary materials are work product protected from disclosure by both the Federal Rules and the stipulated CMO. Defendants do not have a substantial need for any preliminary drafts because they have in their possession all of the raw data, can retain their own experts, and will obtain reports setting forth the opinions of the FTC's testifying experts at the appropriate time.

The opinions held and facts known by non-testifying experts are also work product, are not required to be produced under the CMO, and are discoverable only under "exceptional circumstances." According to Defendants, the actual calculations made by the FTC's experts are "simple," "straightforward," and based on "publicly available models." D.E. 49, Defendants' Memorandum in Support of Defendants' Motion to Compel ("Def.'s Mem."), at 2, 5, and 7. Because there are many experts capable of calculating market shares and diversion ratios from

hospital admission data, and the FTC will produce the reports of its testifying experts, there are no exceptional circumstances justifying discovery of the opinions held or facts known by consulting experts.

Further, FTC economists analyzed this transaction for the purpose of enabling the Commission to decide whether to bring the claims now before this Court. Their "calculations" are pre-decisional and reflect staff judgment. Accordingly, those materials are protected by the deliberative process privilege in addition to the work product doctrine and the Federal Rules.

Defendants concede that the materials they seek are protected by, at minimum, the work product doctrine, but demand that the FTC produce them anyway. According to Defendants, the FTC waived the right to assert any privilege by alleging market shares and diversion ratios in its complaint thereby putting its calculations "at issue" in the litigation. At issue waiver, however, only applies if the *content of a privileged document or communication* is at issue. The FTC's complaint puts at issue whether Defendants have large shares of the relevant market, not whether a preliminary estimate of market shares was properly calculated prior to the FTC filing its Complaint.

## II.  DEFENDANTS HAVE NOT ESTABLISHED GOOD CAUSE TO MODIFY THE CMO

"Complex cases such as this one must have enforceable discovery deadlines." *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 545 (N.D. Ill 2005) (citing *Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir. 1996)). For that reason, the FTC and Defendants negotiated a CMO containing a comprehensive schedule for discovery. *See* D.E. 39, Joint Stipulated CMO so ordered by Judge Alonso. "The parties [have] a right to expect that having been set, those deadlines will be honored." *Amerigroup Ill., Inc.*, 230 F.R.D. at 545; *see*

4

*also Pain Ctr. of SE Ind., LLC v. Origin Healthcare Solutions LLC*, 1:13-cv-00133-RLY-DKL, 2015 U.S. Dist. LEXIS 164111 at *4 (S.D. Ind. Dec. 8, 2015) ("the Seventh Circuit advises district courts to firmly adhere to discovery deadlines established after consultation with the parties.")  The CMO may only be modified for "good cause."  CMO at ¶ 1(B)(30); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.")

The stipulated CMO governs the timing of expert discovery in this case.  Under the CMO, the FTC's expert reports are due February 26, 2016.  A party is "not required [] to disclose its experts' opinions in advance of the deadline for serving expert reports." *Genband US LLC v. Metaswitch Networks Corp.*, 2016 U.S. Dist. LEXIS 2652 at * 5-6 (E.D. Tex. Jan. 8, 2016); *see also IP Innovation L.L.C. v. Sharp Corp.,* 219 F.R.D. 427, 430 (N.D. Ill. 2003) ("Plaintiffs' request for an invalidity analysis before Sharp is required to produce its expert report is denied as premature"); *Duncan v. Chevron U.S.A., Inc.,* Case No. 10-0298c/w10-1455, 2011 U.S. Dist. LEXIS 63707 at *10-11 (E.D. La. June 15, 2011) (holding that discovery of expert opinions and the bases for such opinions was premature in light of expert disclosure deadline imposed by the Court.)

In their memorandum, Defendants say that they will be prejudiced if they do not receive the analyses of the FTC's experts before the expert reports are due because, "[b]y that point, trial will be only a little more than a month away."  Def.'s Mem. at 8.  Of course, Defendants knew the trial date when they were negotiating the CMO and yet insisted on delaying expert discovery until February 26th.  *See* Jan. 26, 2016 Declaration of Jennifer Milici in Support of Plaintiff's Opposition (attached hereto)("Milici Decl.") Exhs 1- 4.  Presumably, Defendants thought the expert disclosure schedule that they proposed was beneficial to them.  All that has happened in the short interim between Defendants' proposal of the operative schedule and Defendants'

5

motion complaining that they are prejudiced by that same schedule is that they apparently changed their minds. This does not constitute "good cause" for modification of the CMO. *Hoffman v. Jacobi*, No. 4:14-cv-00012-SEB-TAB, 2014 U.S. Dist. LEXIS 154284 at *9 (S.D. Ind. Oct. 29, 2014) (denying modification because court was "not persuaded that either judicial efficiency or fundamental fairness to the parties warrants such a deviation.")[1]

The CMO also defines and limits the scope of expert discovery. Pursuant to the CMO, "[n]either side must preserve or disclose . . . the following documents or materials: . . . (ii) expert's notes; unless they are expressly relied upon and/or cited in support of an opinion or fact; (iii) drafts of expert reports, analyses, or other work product; or (iv) data formulations, data runs, data analyses, or any database-related operations not relied upon by the expert in the opinions contained in his or her final report. . . . " CMO at ¶ I(B)(6). The CMO specifically identifies the materials the parties are required to produce, which do not include any materials prepared by consulting experts. *Id.* at ¶ I(B)(5). The stipulation thus independently bars Defendants' from discovering the preliminary analyses of the FTC's testifying experts or the work of the FTC's consulting economists. *See, e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893, 2008 U.S. Dist. LEXIS 18118 (N.D. Ill. Mar. 10, 2008) (denying expert discovery excluded by stipulation.)

### III. DEFENDANTS ARE NOT ENTITLED TO DISCOVERY OF THE FTC'S EXPERT WORK PRODUCT

#### A. Preliminary Calculations by Consultants Assist Plaintiffs in Meeting Pleading Requirements

---

[1] The schedule Defendants insisted upon provides that Defendants' expert disclosures are not due until March 11, 2016, just three weeks before the trial date. *See* Milici Decl. Exhs. 1 and 4. Compelling the early disclosure of the FTC's draft expert analyses while allowing Defendants to withhold their own expert disclosures until mid-March would be prejudicial to the FTC.

The FTC's Complaint is subject to the usual pleading standards applicable in federal court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' . . . [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). By signing and filing its Complaint, the FTC certified its belief, based on a reasonable investigation, that its factual contentions have evidentiary support. Fed. R. Civ. P. 11 (requiring the signature of an attorney or party certifying a belief, based on a reasonable inquiry, that the factual contentions have evidentiary support.) Outside economists retained as consultants by the FTC, along with a number of economists employed by the FTC, analyzed the proposed transaction during the course of the FTC's investigation. Their analyses included estimated market shares and diversion ratios.[2] The analyses of these economists, along with other materials, informed the Commission's conclusion that it has reason to believe that the transaction, if consummated, would violate the FTC Act. The Commission subsequently issued an administrative complaint averring its reasons to believe that the transaction is unlawful. The FTC also filed its Complaint in this Court seeking to maintain the status quo while the administrative proceeding is pending, and used the preliminary analyses of its consultants to establish the requisite knowledge and belief that it had support for the facts alleged in the Complaint.

---

[2] Market shares are used to measure concentration using the Herfindahl-Hirschman Index ("HHI"). The HHI is the total of the squares of the market shares of every firm in the relevant market. Thus, once market shares are determined, HHI's are calculated using simple arithmetic.

On February 26, 2016, pursuant to the CMO, the FTC will identify any testifying experts and turn over to Defendants all discovery materials not previously produced that are required by the CMO and Federal Rules. At this time, the FTC's testifying experts will have performed final, independent analyses of the relevant material available in this case. The analyses of these testifying experts may vary to some degree from the analyses performed by the FTC's economists prior to the initiation of this action because, among other reasons, new data, documents, testimony, and other information may become available during the discovery process. Only the final opinions and analyses of the FTC's testifying experts will be submitted as evidence to prove the FTC's claims; Plaintiffs will not rely on any work by consulting experts or any drafts prepared by testifying experts.

B.  Preliminary Calculations are Protected Work Product

The materials sought by Defendants are work product protected from disclosure by the Federal Rules and the CMO because they are either (i) the drafts and notes of testifying economic experts, or (ii) the opinions of consulting economic experts. Rules 26(a)(2) and 26(b)(4) govern discovery of any person who has "been identified as an expert whose opinions may be presented at trial." The rules specify that a testifying expert must provide information in the form of a report, including a complete statement of all opinions the witness will express, the basis and reasons for the opinions, and the facts or data relied upon by the witness in forming the opinions. Fed. R. Civ. P. 26(a)(2)(B). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Opponents may take the deposition of a testifying expert only after the expert's report has been produced. Fed R. Civ. P. 26(b)(4).

If the FTC decides to offer any outside economists as expert witnesses, it will produce their reports and make all disclosures required by Rule 26 pursuant to the schedule ordered by

the Court.[3]  The FTC's outside expert economists have not completed expert reports and are not

required to do so until February 26, 2016.  Any drafts currently maintained are work product

expressly protected from discovery under the Federal Rules and the CMO.  Fed. R. Civ. P.

26(b)(4)(B) ("Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under

Rule 26(a)(2), regardless of the form in which the draft is recorded"); CMO ¶ (I(B)(6)(iii)-(v).[4]

Defendants have not demonstrated a substantial need for the work product of any testifying

expert because they can retain their own experts to calculate market shares and diversion and

will receive expert reports from the FTC at the time specified in the CMO.  *See, e.g., Meds. Co.*

*v. Mylan Inc.*, No. 11-cv-1285, 2013 U.S. Dist. LEXIS 82964 at *15-16 (N.D. Ill. June 13, 2013)

(finding that party did not have a substantial need for drafts and notes because it received the

final report of its opponent's testifying expert and retained its own expert to rebut the opinions

expressed therein.)

      In addition to the FTC's outside economists, a number of economists who are employees

of the FTC analyzed the proposed merger and its likely effects on competition.  These

economists, and any outside economist who does not serve as a testifying expert, are consulting

experts within the meaning of Rule 26(b)(4)(B).  "Consulting experts do not offer testimonial

evidence during a litigation proceeding, and parties are therefore not entitled to discovery from

---

[3] Defendants imply that the FTC has agreed to waive work product protection on February 26, 2016.  *See* Def's Mem. at 8.  Defendants are incorrect.  Once the FTC designates a testifying expert and produces that expert's report, the bases of the expert's opinions are no longer protected work product.  The FTC has no intention of waiving the work product protections applicable to the facts known and opinions held by consulting experts or to the draft reports and notes of its testifying experts.

[4] Defendants argue that they are entitled to the early disclosure of expert analyses so that, if the FTC puts forth different figures at a later date, they can depose the FTC's expert on the shifting position.  Def's Mem. at 8.  By virtue of Rule 26, parties are not typically able to depose experts about any changes in their opinions between early and later drafts.  Moreover, Defendants specifically stipulated to the exclusion of drafts and interim data runs from expert discovery in this case.  *See* CMO at ¶¶ I(B)(6)(iii)-(v); Milici Decl. Ex. 4 at 4, ¶ 1(B)(6)(v) (" Defendants' do not accept request for 'intermediate files,' as that term is ill-defined and likely implicates work-product protections.")

consulting experts." *Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09 C 4348, 2012 U.S. Dist. LEXIS 121333 at *21 (N.D. Ill. Aug. 27, 2012). Unlike the work product doctrine, Rule 26(b)(4)(D) not only prohibits discovery of mental impressions, it also protects "facts known or opinions held" by a consulting expert. Fed. R. Civ. P. 26(b)(4)(D). "Even the methodology employed by a consulting expert is off-limits." *Sloan Valve Co. v. Zurn Indus.*, No. 10 C 204, 2012 U.S. Dist. LEXIS 161749 at *13 (N.D. Ill. Nov. 13, 2012); s*ee also Sara Lee Corp. v. Kraft Foods Inc.*, 273 F.R.D. 416, 420 (N.D. Ill. 2011) (finding that materials relating to the methodology of a consulting expert which might shed light on an expert's report were not discoverable.)

Rule 26(b)(4) only permits discovery of consulting experts "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). Exceptional circumstances exist where there are no other experts on the subject available, or where some unusual circumstance enables one party to observe an important object or condition that was simply not observable by an expert of the to the party seeking discovery. *Braun v. Lorillard, Inc.*, 84 F.3d 230, 236 (7th Cir. 1996). As Defendants concede, the calculations at issue here "are based on publicly available models and evidence from third parties." Def.'s Mem. at 1-2. The evidence from third parties has been produced to Defendants and the calculations themselves are, according to Defendants, "simple" and "straightforward." *Id.* at 7. Defendants should have no difficulty retaining experts capable of using third party data to make simple calculations.

C. <u>Materials Generated by the FTC's Consulting Economists Are
Protected by the Deliberative Process Privilege</u>

The analyses prepared by the FTC's consulting economists to assist in the Commission's decision to issue an administrative complaint are also protected from disclosure by the deliberative process privilege. The "deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993.) The purpose of this privilege is to "prevent injury to the quality of agency decisions" by fostering frank and candid communications among decisionmakers. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975). Courts have consistently held that the deliberative process privilege precludes antitrust Defendants from delving into the confidential decision-making process of the FTC. *See, e.g.*, *Farley*, 11 F.3d 1385 (staff memoranda are clearly part of the FTC's deliberations and exempt from production); *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161-62 (9th Cir. 1984) (compelling disclosure of the memoranda of FTC economists "almost certainly injures the quality of agency decisions.")

The deliberative process privilege does not extend to purely factual material in its raw form. Where facts are intertwined with deliberative or advisory matter so as to reflect staff judgment, however, the factual portions are protected from disclosure. *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (winnowing a complex and fact-intensive record down to a core group of selected material for review is protected deliberative process); *FTC v. Bass Brothers*, No. C84-1304; No. C84-1311, 1984 U.S. Dist. LEXIS 16889 (N.D. Ohio May 8, 1984) (denying Defendant access to a government staff economist's pre-complaint report based on the deliberative process privilege.)

FTC economists analyzed this transaction as part of the FTC's deliberative process and compelling disclosure of their memoranda or working notes would injure the quality of the Commission's decisions. Any purely factual material has already been produced to Defendants, including the raw hospital admission data underlying the market shares and diversion ratios alleged in the complaint. The "calculations" made by FTC economists reflect staff judgment and are not discoverable.

### D. The FTC Has Not Waived Any Privilege

Conceding that the expert materials they seek are protected by at least the work product doctrine, Defendants argue that the FTC has implicitly waived the protections afforded those materials by putting the work product of its experts "at issue" in this litigation. As Defendants recognize, an "implied waiver may be found [only] 'where the privilege holder relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications.'" *Patrick v. City of Chicago*, No. 14 C 3658, 2015 U.S. Dist. LEXIS 145811 at *28 (N.D. Ill. Oct. 28, 2015) (quoting *Lorenz v. Valley Forge Insurance Co.,* 815 F.2d 1095, 1098 (7th Cir.1987)). No implied waiver can be found here because the examination of privileged materials is not necessary to resolve any issue raised by the complaint. At trial, the FTC will rely on the opinions of testifying experts, witness testimony, and party and third party documents to establish the Defendants' sizeable market presence and the close competition between Advocate and NorthShore hospitals. The FTC will not present to the Court any consulting expert's analysis or any testifying expert's draft and the privileges afforded those documents are not waived.[5] *See Dover v. British Airways, PLC*, No. 12 CV 5567, 2014 U.S.

---

[5] Defendants' memorandum refers to market shares, market concentration, and diversion ratios as "undeniably central," "central pillar[s], "playing a pivotal role," "prominen[t]' and "the very heart of the Plaintiffs' Complaint." *See* Def's Mem. at 2, 5, 8. Despite the repetition, the assertion is neither true nor

Dist. LEXIS 114121 at *5 (E.D.N.Y. Aug. 15, 2014) (plaintiff did not waive work product protection by referring to analyses of consulting experts in its complaint, in submissions to the court, and in oral arguments on a motion to dismiss because plaintiff "intend[ed] to use different experts at trial who will base their analyses on information obtained in discovery beyond what was publicly available pre-litigation"); *Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 253 (D. Mass. 2013) (no "at issue" waiver found where MassMutual cited a forensic review in over thirty separate paragraphs of its complaint because "MassMutual does not need the forensic review to prove its claims and has explicitly eschewed any use of the forensic review as evidence at trial.")

Further, Defendants cannot suggest that the FTC implicitly waived any privilege by selectively disclosing favorable privileged material and withholding unfavorable material, as the FTC has not disclosed ***any*** privileged communications or documents. *See United States v. Capital Tax Corp.*, No. 04 C 4138, 2011 U.S. Dist. LEXIS 40747 at *7 (N.D. Ill. Apr. 12, 2011) (waiver only occurs where a party attempts to prove a claim or defense by disclosing or describing privileged documents or communications); *Chamberlain Group v. Interlogix, Inc.*, No. 01 C 6157, 2002 U.S. Dist. LEXIS 5468 at *11 (N.D. Ill. Mar. 26, 2002) (a party who "has not used attorney-client communications to prove a claim or defense" has not waived its privilege); *cf Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49, 55-56 (S.D.N.Y. 1999) (work-product protection waived where plaintiff quoted third-party's privileged

---

relevant. The Complaint refers to market shares in only three paragraphs and diversion ratios in only one. Even if the allegations were somehow 'central' or 'pivotal' their 'centrality' would not waive the work product protection because the allegations concern factual matters (whether the Defendants have large market shares) and not the content of any privileged document.

documents in complaint *and* used excerpts of privileged notes and memoranda in depositions to question witnesses.)[6]

Finally, Defendants have the raw hospital admission data underlying the specific market share and diversion estimates alleged in the complaint. Accordingly, there is no unfairness in the FTC asserting work product protection over preliminary analyses of that data. *Deangelis v. Corzine*, 11 Civ. 7866, 2015 U.S. Dist. LEXIS 18207 at *71 (S.D.N.Y. Feb. 9, 2015) (basing allegations on expert report did not waive privileges where the opposing parties "do not lack access to the raw material underlying" the report); *Dover v. British Airways, PLC*, 2014 U.S. Dist. LEXIS 114121 (plaintiff not required to produce report prepared by consulting expert and referenced in complaint because plaintiff did not intend to use analysis at trial and the underlying raw data was produced to the opposing party.)

## IV. CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court deny Defendants' motion to compel.

---

[6] Defendants misread the decision in *Granite Partners*. In that case, the court found that the plaintiffs implicitly waived any privilege protecting certain interview notes by using those notes offensively in depositions. *Granite Partners*, 184 F.R.D. at 55. The court also found that the Defendants had established a substantial need for an expert's financial analysis because Defendants were unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Id.* at 56. The court did not find that the plaintiffs waived work product privilege as to expert calculations by placing them at issue.

Dated: January 27, 2016                              Respectfully Submitted,

                                                     /s/ J. Thomas Greene
                                                     J. THOMAS GREENE, ESQ.
                                                     KEVIN HAHM, ESQ.
                                                     SEAN P. PUGH, ESQ.
                                                     DANIEL ZACH, ESQ.
                                                     JENNIFER MILICI, ESQ.
                                                     Federal Trade Commission
                                                     Bureau of Competition
                                                     600 Pennsylvania Avenue, NW
                                                     Washington, DC 20580
                                                     Telephone: (202) 326-3201
                                                     Facsimile:  (202) 326-2286
                                                     Email: tgreene2@ftc.gov
                                                     Email: khahm@ftc.gov
                                                     Email: spugh@ftc.gov
                                                     Email: dzach@ftc.gov
                                                     Email: jmilici@ftc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of January, 2016, I filed and served the

foregoing on all counsel of record via the Court's electronic filing system.

_____

Jennifer Milici

Attorney for Plaintiff
Federal Trade Commission